Good morning, Justices Siller, Bybee, and Nelson. David Waters for Appellant Liberty Surplus Insurance Corporation. May it please the Court. The overarching issue here is the right or preclusion of equitable contribution to the monies that travelers paid to defend and to settle a case. There are three principal arguments that Liberty Surplus raised, only one of which travelers made a response to. There are two arguments why it doesn't exist, the right to equitable contribution, and two of them travelers did not respond to. The first one was that this corporation was suspended under two provisions of state law. One under the corporation's code for failure to submit the required statement of information about its officers. The second was by the revenue and taxation code, which requires corporations to file tax returns and to pay their taxes. This insured dura art was suspended for both reasons. It didn't pay its taxes, it didn't file its tax returns, and it didn't file a statement of officers. We argued strenuously, both in our opening brief and in our reply brief, that the failure to file the corporation's code statute information that resulted in the suspension has no exemption for insurance companies to defend an insurer. Does 2205 trump 197719? They're independent. Right, but if you can do it under one and you can't do it under the other, either you can do it or you can't do it. And if you've got to follow both of them, what do you do? Well, it's like saying you can't speed through a red light, you can't go through a red light, and you can't go more than 50 miles an hour. You have to obey both laws, and this is one. But that would mean, then, that you could never file under 197719. Corporations can be suspended for either or both reasons. So you could be used if the corporation kept up its registration. And that's the simplest thing in the world to do, as one of the cases said, is you can, filing the statement of information can be done in a matter of days. Is there a case on that that says you can do it one way, but if the other statute precludes it, you can't do it? That's the Palm Desert case, where the attorney was sanctioned by the court for continuing to represent a suspended corporation that hadn't filed its statement of information, and that attorney was relying on 197719, saying, it's okay for insurance companies to defend a suspended corporation. And they said that attorney should have known that you can't pretend to go under 197719 when 2205 says you can't. And that attorney was sanctioned, and the Court of Appeal upheld the sanction for not informing the court of the disability and of his improper representation. I appreciate your point about saying that these operate independently. You don't have to violate both of them at the same time, although here, Dewey Stone did. But the suit that's been brought by travelers, I don't see that it's prohibited by 2205, and it was brought in their own name. That's not representing the corporation. They brought it under their own name, as authorized under 197719. Well, they brought it in their own name, authorized by California Code of Civil Procedure, I think it's section 387. An interested party may intervene in a case. So they can intervene. You still get to intervene in their own name. And 197719 makes very clear, you can't come in on behalf of the corporation if the corporation is suspended. If you're an insurance company, then you may come in under your own name. I don't see that that violates 2205. What I'm saying is that travelers, well, it didn't violate 2205 because it intervened. What I'm saying is, there was no duty to defend the suspended corporation. It's improper, illegal, and sanctionable. That's a different point. They had the option of coming in under 197719. They may not have an obligation to come in, but they have the option of coming in. They exercise that option. That's exactly our point, is that the insurance company has the option to intervene if it wishes to protect its own interests. And the cases make clear that it is their own interest that's being protected, and they're not defending the insured by doing so. And that's illustrated by the Western Heritage case, which, although not a suspension, that's where an insurance company intervened after a discovery sanction defaulted the employee insured who failed to respond to discovery. So they were, as a default, against that insured. The insurance company came in and intervened so that they could protect their policy, in effect, against having to pay a default judgment. Your real point here is that travelers had the option of doing so. It didn't have a duty to do so. And because it didn't have a duty to do so, and liberty didn't have a duty to do so, they can't get contribution from liberty. Correct, because contribution only exists when two parties have an identical obligation, and here there was no identical obligation because there was no obligation. You said neither side had an obligation. I'm sorry? You say neither side had an obligation. Correct. And that's the case that stands for the proposition that there is no contribution when nobody had an obligation and somebody did, in fact, perform, is the United Pacific versus Hanover case, which was cited. That's a case where three insurance companies contributed to a settlement and argued which one should have paid more. And the Court of Appeal of California said, well, we can't apply equitable contribution here because not one of you had coverage. If you all had coverage, if you all had a duty to pay that judgment or that settlement, then we could have redistributed it under equitable principles. But when you have no obligation, you can't redistribute the burden because there's no equity to be exercised. Now, the second thing that travelers didn't respond to was the fact that there is no duty to indemnify anything other than a judgment entered against the insured. Here, travelers settled. There's no obligation to settle under the policy. The obligation is to pay entered judgments. They did not do so. And so there's no, and they didn't respond to that argument either. So there's two arguments they didn't respond to. The Corporations Code argument, they didn't even cite the Corporations Code. Let's suppose that Durastone had had insurance with both companies and that it was not suspended in any way and that travelers said, gee, we think we've got a duty to defend you in this suit. And Liberty says, actually, we don't think we do have a duty to defend. Could travelers come for contribution from, I guess, Liberty? In that case, under your hypothetical, as I understand it, both insurance companies had a duty to defend. Right. Only one of them accepted and honored the duty to defend. The other one did not. Right. Then that's exactly when equitable contribution is owed. So if travelers settles that case within the policy limits, it can't collect from Liberty? Again, in that hypothetical, if Liberty Surplus had breached the duty to defend a non-suspended corporation. I don't understand your point here about settlement. I understand your point about the prior point, but I don't understand this point about because this is a settlement, it somehow obviates their need for contribution. If, in your hypothetical, you were correct that if travelers had a duty to defend a non-suspended corporation and Liberty Surplus had a duty to defend a non-settling unsuspended corporation, then after we breached that duty to defend, then travelers and the insured are both lifted from the prohibition of settlement. So then we would owe the settlement if we breached. Whether you get a jury verdict or you settle seems to me to be irrelevant to your point. Your point basically is we didn't have an obligation to get into this suit, so you can't see contributions against us. Part 2 flows from Part 1. If we had no duty to defend, then we don't have to reimburse the settlement either. If travelers had pursued this and it had gone to a jury verdict, would Liberty then be on the hook? Yes, because the duty under the policy is to pay judgments. And so let's say exactly what happened here and travelers went to trial and there was a judgment against Dura, the corporation's code suspension and the revenue and taxation suspension do not apply to judgments. And that's why you have the right to intervene is because instead of it being prohibited from intervening and therefore there's now a judgment against the insured, you have to pay the judgment. That's exactly why the right to intervene to protect your own interests is created by the California courts and legislature is so you can protect yourself. You protect yourself, but you're not protecting the interests of the suspended corporation because like I said, in the Western Heritage case, there's a default. The insurance company was allowed to... If they'd recovered, if the jury had awarded a million dollars against Dura, then you would be on the hook for that. They settle it for less than a hundred thousand dollars. You wouldn't be on the hook for that. Correct. It's a weird rule. I'm not sure I followed the logic of it, but it's a weird result. It's exactly what the California law says. The California law says that if an insured thinks I've got a good settlement and I'm going to make the settlement without the approval of the insurance company, there's no obligation to reimburse that. So if travelers had agreed with the plaintiff in the case and said, well, we'll just agree to a judgment of a hundred thousand dollars. Would you be on the hook there? Potentially, potentially because that often happens. Well, I'm sorry. I'm sorry. If only if we had a duty to defend that was breached. Often insureds, if an insurance company improperly declines to defend, they'll go out and settle and sometimes it'll take the form of a stipulated judgment. But the key here is that in the Jamestown case is the case where the insured decided to settle the case without the consent of the insurance company because they thought it would be cheaper to do that than to suffer a judgment and the California Court of Appeals said, no, it's not owed. It's the insurance company's choice of its own to settle or not settle. You can't exercise that for us. It has to be a judgment. If we agree to the settlement, we'll pay it. But unless we breach a duty to defend, we're not liable for settlements. And so here, the cases show that equitable contribution is only available when there is a breach of a duty. There's two duties at issue here. One is the duty to defend. One is the duty to identify. There was no duty to defend because we couldn't defend because of the corporation's code. Now, there's arguments why, and the brief sets forth why the Revenue and Taxation Code suspension does not create an obligation to defend. And the Coughlin and Broad case, which is Traveler's main case, does not impose a duty to intervene. It was a case that was considering, if you want to protect your interests, can you do so in the name of the insured or must you intervene? And the Revenue and the Coughlin and Broad case said, clearly, you can't appear in the name of the insured. We're not going to make it illegal if you do so. But they still said, you can't do it that way. You still got to only protect your own interests. And so if both Travelers and Liberty had sat this one out and a judgment came out against Deweystone, they would both be on the hook? They would both be on the hook for the judgment, yes. However, they would have a defense of lack of cooperation by the insured by, you know, you've prevented us from defending because you're suspended. So but that's not the case here. There's a default. That's why they allowed in the Western Heritage case, the insurance company to intervene after the insured was defaulted and the insurance company was protecting its own interest because they didn't, the case specifically said, the insurance company did not have to set aside the default. So the insured's left out there with a default against them, but the insurance company can protect its interests. And I don't have to help Travelers protect its own interests, is the bottom line. And I'll reserve any remaining time. Okay. Thank you, Mr. Waters. Mr. Brown. Good morning, Your Honors. Ray Brown from the Aguilera Law Group on behalf of Appelli Traveler's Property Casualty Company of America. May it please the Court. Liberty Surplus argues that it had an opportunity to intervene, but no duty to intervene, and that it was illegal for it to defend DuraArt, its insured. Liberty Surplus's obligation to its insured begins with its policy, and the policy in this case imposed a right and duty to defend any suit against its insured seeking damages due to bodily injury or property damage. It also imposed the duty to pay sums the insured becomes legally obligated to pay. Not judgment-centered against it, but sums it becomes legally obligated to pay. Now, there's no dispute that the cross-complaint filed by Howard S. Wright Construction Company in the underlying action sought damages against DuraArt due to property damage to which Liberty Surplus's policy applied. So the only issue is whether DuraArt's corporate suspension excused Liberty Surplus from its obligation to defend DuraArt. Now, as the district court noted, the policy includes no limiting language. The policy does not say anywhere that this duty to defend our insured does not apply in the event that the insured becomes suspended. What if the state law precludes that? Well, and that that is the remaining argument that that Liberty Surplus advances, both advanced in the district court and advances here today. We can't do it. We'd love to do it, but we just can't do it. Correct. And Liberty Surplus contends that its duty is excused under California law because it is illegal for an insurer to intervene and defend a suspended corporation. Basically, what Liberty Surplus argues in its papers is that an insurer can, has the ability to intervene to protect its own rights, but not to defend its insured. Not only is that not supported by the law, but it's a distinction without a difference. The manner in which an intervening insurer protects its right is by preventing a default or any adverse judgment against the insurer. A judgment against its insured, when it intervenes, that is defending the insured. Whether you're the insurer's primary motivation is to protect itself from the consequences of a judgment against its insured, or to protect its insured against the possibility of an adverse judgment, it is of no moment. They are literally the same thing. In fact, as we pointed out in our brief, the California statutory and case law are replete with confirmation of an insurer's ability to intervene both to protect itself and to defend its insured, because those are the same thing. First of all, Revenue and Taxation Code 19719B specifically provides that the penalties set forth in 19719A do not apply, quote, to an insurer or to counsel retained by an insurer on behalf of the suspended corporation who provides a defense for a suspended corporation in a civil action, close quote. So clearly, 19719B, by enacting that, the legislature was recognizing that an insurer can provide a defense for a suspended corporation. It specifically says that. Scalia. How do you read that in connection with this other one, the 2205, the current registration and whatever it requires? Well, actually, I believe Mr. Waters conceded that intervening, an intervention by an insured does not run afoul of 2205. That's what Travelers did here and what Travelers is saying Liberty Surplus had a duty to do in order to defend its insured. Are you saying he's admitted it here or before the district court, or both? I believe he admitted it during oral argument that what Travelers did by intervening in the underlying action did not run afoul of 2205. That was my understanding of what Mr. Waters said. Well, what about his statement that if you settle it, he's not obligated. You have to have a judgment of some sort. Well, that's. Where did that come from? I believe what Mr. Waters was saying was that absent a duty to defend, that's true. And I agree with him. The problem is that Liberty Surplus had a duty to defend DuraArt and it did not comply with that duty. And it is clear under Liberty Surplus's policy, the policy language makes clear Liberty Surplus had a duty to defend DuraArt. So the question is just, could Liberty Surplus, could it comply with that duty? And Liberty Surplus is saying, no, we couldn't. It's illegal for an insurer to defend a suspended corporation. So we could not do it. Revenue and Taxation Code 19719B specifically talks about an insurer providing a defense for a suspended corporation. So unless the legislature was somehow saying it's okay for somebody to break the law, that doesn't make sense. The legislature was specifically recognizing that an insurer can provide a defense for a suspended corporation. If Liberty Surplus could provide a defense for a suspended corporation, then under their policy, they had an obligation to do so. Because they breached that obligation, the resulting settlement, they are on the hook for. And I don't believe Mr. Waters disagrees with me on that point. Work with me. What happens here if both Liberty and Travelers decide to sit this out? So if Travelers did the same thing that Liberty did, what happens in the case against DuraArt? Presumably, a default judgment gets entered against DuraArt. And then the plaintiff, well, in that case, it was the cross-complainant, could pursue actions against both Travelers and Liberty Surplus. Do you have a defense to that action? Do you have a defense to that action to collect? Mr. Waters said you did. You had a lack of cooperation charge. I don't know if we have a lack of cooperation defense. What we don't have is a defense of impossibility, that it's illegal, because it's not. No, it's not illegal. I mean, the curious thing about the code is that it's permissive. It doesn't say, well, if you're insured, that's different. You can bring—you must bring suit in your own name. It says—it seems to give you an option. Now, you seem to assume some risk. If you don't come in, you assume whatever risk there is that somebody's going to collect it. And I guess that creates the possibility that you have a defense to the action. Well, and the reason I think the code is permissive and just says that an insurer is not subject to the penalty set forth in 19719A is because the duty to intervene and defend your insured does not arise by the statute. It arises from your policy. If your policy—as the district court acknowledged, if Liberty Surplus's policy said our right and duty to defend our insured is excused in the event that the insured becomes suspended, then Liberty Surplus would have no duty. Again, let me go back to the hypothetical. If travelers had sat this one out, default judgment is entered, does Dura-Arts have a cause of action against you? Well— That would be the contract, right? You had a duty to defend. Yes. I mean, certainly, travelers would have violated a duty to defend owed to Dura. Right. Do they have a cause of action? Is that when we're going to be successful in light of 2205 and 17719 or 19719? Well, that's the problem is I don't think Dura-Art can prosecute that claim. They can't do it. So then you wonder whether you really do have a duty to defend if they can't prosecute it. Well, the fact that they can't prosecute it, though, I mean, there can be many reasons why a plaintiff cannot bring a claim or would lose on that claim. Can they get reinstated under California law? Once they're suspended for this 2205, can they get right back in by filing something? They can. And honestly, I don't know the answer as to whether, if they get reinstated, if they comply with 2205, if they comply with their taxes and get reinstated, whether they would then have a cause of action against the carriers for bad faith, for failure to defend. You don't want to take the chance on it. We don't want to take the chance on it. That's correct, Your Honor. I mean, I think another problem they might run into is whether they actually have damages against them, which they may or may not, depending on the situation. But I don't think any of that changes the analysis. The insurance policy is a contract. Dura-Art and Liberty Surplus entered into a contract. Under that contract, Liberty Surplus had a duty to defend Dura-Art. Under certain circumstances that are not contested came into play here. So the duty may be excused legally if the corporation goes out of existence. The company is, you know, but for the exception in 19-719, you're barred from going in and defending them. That seems to excuse your duty. Then there's this permissive exception in 19-719. I'm not sure that it's necessary to this decision, but I don't think that's accurate. As I read the law, when you go through the decision in KB, the KB case actually talked about the fact that prior to the 1999 amendment to 19-719, an insurer already could intervene to prevent its insured from having a judgment entered against it. The reason, as set forth by KB in citing the legislative history of 19-719B, the reason why that statute was amended was because there was some ambiguity in the statute which purported to prohibit insurance companies from defending actions brought against the suspended corp. But there were cases, including the truck insurance case, which was decided in 1997, that specifically said an insurance company could. So there was just this ambiguity, apparently, that the legislature saw, and that's why 19-719B was enacted in 1999. But according to the KB case and according to the truck case and the laws it was at the time, an insurer already could intervene. What they couldn't do was intervene and pursue the insured's affirmative rights, which is what the KB case was talking about, and the truck case was talking about. The truck case was talking about subrogation. KB was not. But what the KB case was talking about was, unless an insurer intervenes, it cannot pursue costs and fees triggered by CCP 998. But based on the analysis done by the KB court, an insurer already could intervene and defend its insured. And the — we keep throwing around the language of, you know, obligation to defend or option to defend. The statute seems to be permissive. You've argued that the contract makes it mandatory. And yet, after I've pushed you just a little bit, I think you had to concede that DuraArt can't enforce the duty to defend against travelers or liberty because it's going to be  That's correct. As DuraArt presently stands. That suggests, then, that travelers and liberty have been relieved of their duty to defend. They may have other reasons for wanting to do so, but that's why the exception to 19-719 is so interesting, is it appears to give you the option of coming in and doing so if you wish. But you have to do it in your own name. I don't think that's accurate, Your Honor. I mean, just the fact that DuraArt, as it's presently situated, could not bring a claim for bad faith against the carriers does not mean the carriers don't have a duty anymore. They have a duty under the contract. Well, they may have a moral duty. But right now, we're concerned about legal duties, and those may not be the same thing. Well, I think they have a legal duty under the contract, which could damage DuraArt. It's an unenforceable contract. It's an unenforceable obligation. It is an unenforceable obligation. It is an obligation nonetheless. And I think Liberty Surplus, in its papers, acknowledges that if it's legal for it to defend, then it would have to defend. But they're saying, no, no, we had the option to intervene, but we could not have had the duty to intervene because we can't intervene to defend the insured. We would only be intervening to protect our own interests. And that's contrary to the language of 19719B. It's contrary to the second district's holding in the El Escorial case, which specifically refers to insurers being obligated to defend suspended corporations. It's contrary to the KB Court's analysis that talks about the mechanism by which an insurance company can provide a defense to a suspended corporation to protect the rights of its insured. Given those clear provisions in California law, there's no rational basis for a claim that it would be impossible for Liberty Surplus to do this, that Liberty Surplus could not have defended DuraArt. If Liberty Surplus could have defended DuraArt, then it had an obligation to do so. Remind me, how much is at stake? Is it $80,000? The ultimate judgment was, I believe, $100,000. OK, so you're asking for $50,000? No, I'm sorry. There was a stipulated judgment in the district court for $100,000. OK, so how much are you asking for from Liberty? $100,000. OK, $100,000. No, the amount that Travelers paid was over $200,000. OK, OK, I got it. So let me ask one last question, which I will also ask Mr. Waters. And that is, I assume that you've tried to settle these cases. Do you have any interest in mediating this? This is a very, very interesting question. And, you know, at some point, both sides may be unhappy with the answer. You may be happy. Somebody may be happy this time, but you're going to be unhappy next time. Are you interested in trying to mediate this through the court mediator service? I don't believe so, Your Honor. OK, all right. Thank you for the straightforward answer, and thank you very much, Mr. Brown. Mr. Waters? I think that it is all summed up by the fact that there is the option to intervene by the insurance company if it wishes to protect its own interests. There's no duty to do so. The there's no duty to do so because there's no duty to defend when it's prohibited by law. And this is prohibited by law, I say, by both 2205 of the Corporation's Code and 19719 A of the Revenue and Taxation Code. So your position is that travelers, in defending them, violated the law? No, they intervened. I see. They would have violated the law if they had done it in the name of the corporation. That is the duty to defend that is owed under the policy. The option to intervene is granted when you can't defend, you're insured. And the law says you can't do it. The Revenue and Taxation Code has the exception, but Travelers only quotes half of the section. It says if you defend and in conjunction with that defense of the insured, sue for express indemnity and contribution in the name of the insured. But you can't do that. Anyway, the point being is that it's not a duty to intervene. There's no duty to intervene because the Western Heritage case says that you can intervene, but you don't have to set aside the default of the insured. You're intervening to protect your own interests. And equitable contribution, the overarching issue in this case, only applies when there's two people or two insurance companies that both have the same duty to the same party and did not exercise it. And intervention, as your Honor pointed out, you know, we could, if there was a judgment against the insured, we'd have to pay it subject to a defense of failure to cooperate, which requires actually, you know, demonstrating actual prejudice, that you are actually prejudiced by the insured being suspended and not defending the case. But otherwise, we'd have to pay the judgment. But there was no judgment. We only have to pay, indemnify, entered judgments against the insured. Okay. Thank you, Mr. Waters. We thank both counsel for the argument. And an interesting case, Traveler's Property Casual Company versus Liberty Surplus Insurance Corporation submitted. Well, and you forgot to ask me the question that you asked counsel. Well, I assumed that you didn't want to mediate this alone. So I'm sorry. Yes, I would be interested in your response. No, seriously, I think both parties would appreciate a definitive published decision on this point. Got it. Okay. It comes around every once in a while. All right. I appreciate candor of both counsel. And thank you very much for the argument. We appreciate it. Final case on the oral argument calendar is Coleman versus Brown.
judges: Siler, Bybee, R. Nelson